**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

DENISE CONGLETON,

    Plaintiff,

v.                                    Case No. 4: 11-CV-00097-SPM-WCS

GADSDEN COUNTY, FLORIDA,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

THIS CAUSE comes before the Court upon the Defendant's Motion to Dismiss (doc. 10) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and Plaintiff's response (doc. 12).  For the reasons set forth below, the Court will DENY the motion.

I. BACKGROUND AND PROCEDURAL HISTORY

Beginning in December 2006, Denise Congleton (Congleton), a female, was employed by Gadsden County, Florida (Gadsden County), as an Emergency Medical Technician.  Congleton alleges that a co-worker, Byron Potter (Potter), on numerous occasions (and citing three specific examples) made sexual remarks to her, remarks which Congleton thought to be crude, unprofessional and offensive.  On December 24, 2006, one particular incident was witnessed by her supervisor, Greg Lawler (Lawler).  Congleton filed a complaint with Lawler concerning this incident.

As a result of this report, Gadsden County made an inquiry into the incident and decided to suspend Potter for one week without pay.  However, Congleton alleges that upon his return, Potter was given extra shifts and overtime pay to account for the

missed time. Further, Congleton alleges that her own hours were cut, she was excluded from workplace activities, ignored by Gadsden County's male employees and subject to a hostile work environment and hostile treatment due to her gender. Congleton alleges she was informed that male co-workers no longer wished to work with Congleton for fear of discipline.

Congleton alleges that she was subjected to an increasingly hostile work environment during her employment. Congleton alleges that upon complaining of sexual harassment and the hostile work environment, she was told "that's how we do it around here; if you don't like it, there's other counties hiring" (doc. 4 at 11). Congleton alleges that Gadsden County was unwilling to take any corrective action regarding the sexual harassment and disparate treatment for its female employees and was unreceptive to complaints of sexual harassment filed by other female employees. Further, Congleton alleges that Gadsden County had not provided sexual harassment training since 2006. This hostile work environment continued until Congleton was forced to resign and constructively discharged in May 2007. This suit followed.

## II. MOTION TO DISMISS STANDARD

Pursuant to the Federal Rules of Civil Procedure, a plaintiff must plead only a short plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. (8)(a)(2). The Supreme Court clarified this Rule by stating that the complaint must assert factual allegations which raise the entitled relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court does not require a heightened pleading standard but only enough facts to state a claim of relief

that is plausible on its face.  Id. at 557.  A complaint has facial plausibility when a plaintiff pleads enough facts to allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).  Further, although the facts pled must be more than merely consistent with a defendant's liability and show more than a mere possibility of entitled relief, a well pled complaint may continue even if the actual proof of the facts is improbable and recovery is very remote and unlikely.  Twombly, 550 U.S. at 556-57.

This "simplified pleading standard applies to all civil actions." Randall v. Scott, 610 F.3d 701, 706 (11th Cir. 2010) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).  Specifically, the Supreme Court has held that this standard, and not a heightened pleading standard, applies when a plaintiff's complaint makes allegations against municipal entities pursuant to 42 U.S.C. §1983.  Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993); Randall, 610 F.3d at 706 (finding that the Leatherman holding applies to § 1983 actions against entities). Further, the Eleventh Circuit has stated that "[p]leadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal." Randall, 610 F.3d at 709.  Since Congleton's complaint is alleged against Gadsden County, this Court applies this simplified pleading standard in reviewing Gadsden County's Motion to Dismiss.

III. DISCUSSION OF LIABILITY UNDER 42 U.S.C. §1983

A. General Standard

In applying § 1983, the Supreme Court has held local governing bodies can be sued directly because "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  To sustain a claim against a local government body, a plaintiff must show that either (1) a policy, ordinance, regulation or decision that has been officially adopted or promulgated by the governing body is unconstitutional; or (2) that a "custom" of the governing body, even though not officially adopted is unconstitutional.  Id. at 690-91.

B. Respondeat Superior

However, a local governing body cannot be held liable pursuant to § 1983 solely on the basis of respondeat superior, such that a governing body is not liable merely by employing a tortfeasor.  Id. at 691.  Rather, the governing body is liable pursuant to § 1983 when the execution of a policy or custom – whether through a lawmaker or person representing the official policy – inflicts the injury.  Id. at 694.  Thus, "recovery from a municipality is limited to acts that are, properly speaking, acts of the municipality." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991) (internal citations omitted).  Acts of the municipality not only include "decisions made by the city's official legislative body or in written agreements" but also include "acts of individual policymaking officials" and "pervasive city custom."  Id. at 1480.

This Court recognizes that Gadsden County cannot be held liable simply because one of its employees is a tortfeasor.  Thus, if Congleton's allegations had

concerned only Potter and his sexual harassment and this suit was based solely on the fact that Gadsden County employs Potter, this complaint would not meet the requisite standard of liability. However, Congleton has made factual allegations against Gadsden County as a policymaker, using the specific Potter incident as an example of the alleged harm. Congleton's complaint includes allegations against her supervisor, Lawler; against an unnamed source associated with Gadsden County telling Congleton to move if she didn't like Gadsden County's policy and the work environment it created; against Gadsden County for its failure to respond to other female employees and their attempts to receive redress from sexual harassment and disparate treatment; against Gadsden County for the cut in Congleton's hours as a result of her reporting the Potter incident; and against other male employees of Gadsden County who, while under the control and supervision of Gadsden County, avoided, were hostile to or harassed Congleton. Thus, because Congleton's allegations are not against Gadsden County solely because it employs Potter, but instead against Gadsden County in its capacity as policy maker, this Court will not dismiss Congleton's claim under this exception to § 1983.

### C. Final Policy Maker

The main thrust of Congleton's allegations concerns Gadsden County and its unofficial policy or custom. Although Congleton has not alleged that Gadsden County has officially adopted or promulgated a policy that is unconstitutional, Congleton can establish a county's policy through "an unofficial custom or practice of the county shown through repeated acts of a final policymaker of the county." Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003). However, even though "[n]ormally random

acts or isolated incidents are insufficient to establish a custom or policy," Depew v. City of St. Marys, Ga., 787 F.2d 1496, 1499 (11th. Cir. 1986), the Supreme Court has opined that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); see also Mandel v. Doe, 888 F.2d 783, 792 (11th Cir. 1989) (reaffirming that Pembaur "stands for the proposition that, under certain circumstances, municipal liability may be imposed for a single decision by a municipal policymaker).

Thus, the local governing body is responsible for any actions taken by a particular official who possesses final policymaking authority to establish municipal policy when the challenged action falls within that authority.  Brown, 923 F.2d at 1480. "Whether a particular official has final policymaking authority is a question of state law." Id.  However, this Court's task is "not to determine who, in fact, wields final policymaking authority but only to consider whether plaintiff has alleged sufficient facts to withstand the [defendant's] motion to dismiss."  Id.

Congleton has pled enough factual allegations to establish the plausibility that Lawler was both an official of Gadsden County with final policymaker authority and that he established county policy through his actions.  Congleton alleges that after filing a complaint against Potter for sexual harassment, which report led to the suspension of Potter, any further complaints or reports were ignored.  It is reasonable to infer that Lawler had the ability to begin the investigation process and to punish wrongful acts.  It is also reasonable to infer that Congleton's other complaints, regarding sexual harassment and disparate treatment, were disregarded because her supervisor, Lawler, failed to act upon them.  It is plausible on the face of Congleton's allegations that the

culture, custom and unofficial policy that permitted sexual harassment and disparate treatment of women was established by Lawler's lack of response to the complaints of sexual harassment by Congleton and other female employees.

Further, Lawler, in his status as immediate supervisor, could plausibly have final policymaking authority. The Eleventh Circuit in <u>Mandel</u> found that, despite the fact that supervised treatment was contemplated, a physician's assistant was an official with final policymaker authority with regards to the unsupervised treatment of inmates. <u>Mandel</u>, 888 F.2d at 794. Thus, Lawler's position as an immediate supervisor does not discount the plausibility that he wields final policymaking authority. This Court is not deciding whether Lawler had final policymaking authority, only whether Congleton alleged sufficient facts to make it plausible that Lawler had such authority. On the basis of Congleton's allegations, it is reasonable for this Court to draw the inference that Gadsden County is liable for the actions of Lawler, who plausibly has official authority to act for the county.

Gadsden County's reliance on <u>Depew</u>'s holding - that there needs to be more than an isolated incident or random act to establish unofficial policy or custom - is misplaced for two reasons. <u>Depew</u>, 787 F.2d at 1499. First, the Supreme Court held in <u>Pembaur</u> that a single decision may be enough to establish unofficial policy. <u>Pembaur</u>, 475 U.S. at 480. Moreover, despite Gadsden County's attempts to reduce Congleton's complaint to a single alleged incident of sexual harassment, it is clear that Congleton has alleged multiple incidents involving sexual harassment, including three against Potter, and other instances of her and fellow employees' complaints concerning disparate treatment and sexual harassment being ignored. Congleton alleged that

Gadsden County has not been receptive to claims of sexual harassment, Congleton was subjected to a hostile work environment as a result of reporting the sexual harassment incident, and her hours were cut and she was constructively discharged because she reported the sexual harassment.  Therefore, Congleton's allegations refer to events that can neither be classified as isolated, nor random.

### D. Custom or Widespread Practice

A plaintiff can also demonstrate a county's custom by establishing a widespread practice so permanent and well-settled that it constitutes a custom or usage.  Brown, 923 F.2d at 1481.  A "longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it and failed to stop it." Id.

Congleton alleges that Gadsden County has been unreceptive and unresponsive to complaints concerning sexual harassment and disparate treatment of female employees.  In fact, Congleton alleges that when reporting a particular instance of sexual harassment to Gadsden County, Congleton was informed "that's how we do it around here" (doc. 4 at 11) and that she should find another county to work in if she didn't like it.  Accordingly, it is reasonable for this Court to infer from Congleton's allegations that Gadsden County knew of this widespread practice and failed to stop it.

### E. Lack of Training

A local governing body may also be held liable under § 1983 for a deficiency in training its employees.  City of Canton v. Harris, 489 U.S. 378 (1989).  A governing body's deficiency in training is deemed a policy or custom and comes within the authority of § 1983 when the governing body's deficiency "evidences deliberate

indifference to the rights of its inhabitants." Id. at 389. Moreover, to hold a local governing body liable, the deficiency complained of must be closely related to the plaintiff's injury. Id. at 391.

Regarding this point, Congleton alleges that Gadsden County failed to train its employees concerning sexual harassment. Although Congleton does not specifically allege that such lack of training was a "deliberate indifference" to the rights of Gadsden County's employees, such an allegation is not required. Rather, the fact that Congleton alleged that sexual harassment training was completely lacking is sufficient to make it plausible that such a lack of training was inadequate. Further, this deficiency – the lack of sexual harassment training – is logically connected to Congleton's injury. In fact, it is hard to miss the causal link between an allegation that Gadsden County lacked any sexual harassment training and an allegation that Congleton was the victim of sexual harassment and a hostile work environment from reporting it. Therefore, Congleton's allegation that Gadsden County completely lacked sexual harassment training since 2006, is sufficient to overcome Gadsden County's Motion to Dismiss.

## IV. ORDER

Based upon the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (doc. 10) is DENIED.

DONE AND ORDERED on this first day of June, 2011

*s/ Stephan P. Mickle*
Stephan P. Mickle
Chief United States District Judge